UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SOL VAZQUEZ,

    Plaintiff,

v.                                           Case No: 2:13-cv-839-FtM-CM

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Sol Vazquez, appeals the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). The Court finds that remand is appropriate in this case.

### I.    Issues on Appeal

Plaintiff argues four issues on appeal: (1) whether the ALJ properly evaluated the severity of Plaintiff's alleged mental impairments; (2) whether the ALJ properly considered limitations caused by each of Plaintiff's alleged mental impairments when determining Plaintiff's residual functional capacity ("RFC"); (3) whether the ALJ improperly relied on the Medical-Vocational Guidelines ("the grids") instead of calling a vocational expert ("VE"); and (4) whether the ALJ improperly discounted a treating source's opinion. For the reasons stated herein, the Court finds that reversal and remand is warranted as to the first, second, and third issues. Accordingly, the matter is remanded to the Commissioner to consider each of Plaintiff's alleged mental

impairments and rate the degree of functional limitation resulting from the impairments in accordance with 20 C.F.R. § 404.1520a, to evaluate whether Plaintiff's mental impairments limit her RFC, and to determine whether Plaintiff can perform other work in the national economy by calling a VE to testify.

## II.     Procedural History and Summary of the ALJ's Decision

On September 17, 2010, Plaintiff filed an application for disability, DIB, and SSI, alleging she became disabled and unable to work on September 9, 2010, due to back pain/injury. Tr. 143. The Social Security Administration ("SSA") denied her claim initially on November 16, 2010, and upon reconsideration on February 18, 2011. Tr. 67-69, 79-80. Plaintiff then requested and received a hearing before an ALJ on June 6, 2012, during which she was represented by an attorney. Tr. 29-47. Plaintiff testified at the hearing.

On August 10, 2012, the ALJ issued a decision, finding Plaintiff not disabled and denying her claim. Tr. 12-21. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 9, 2010, the alleged onset date. Tr. 14. At step two, the ALJ determined that Plaintiff had the following severe impairments: status post L5-S1 fusion, fibromyalgia, and asthma. *Id.* The ALJ stated that although there was an allegation of depression, he found that it was not a severe impairment. *Id.* At step three, the ALJ concluded that Plaintiff did "not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."[1] *Id.*

Taking into account all Plaintiff's symptoms and the extent to which the symptoms can reasonably be consistent with the objective medical evidence and other evidence, the ALJ then determined that Plaintiff had the RFC to perform the full range of light work, as defined in 20 C.F.R. § 416.967(b).[2] Tr. 15. The ALJ also found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." Tr. 18. In making this finding, the ALJ stated he considered Plaintiff's obesity, back pain, extremity pain/numbness, asthma, and mental impairments, including depression. Tr. 15-20. In terms of mental impairment, the ALJ noted that there was no history of mental health treatment until the filing of disability and that Plaintiff appears to exaggerate her mental health problems. Tr. 19. The ALJ found

---

[1] Appendix 1 is the listing of impairments ("Listing") that "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 405.1525(a).

[2] The regulations define "light work" as follows:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 C.F.R. § 404.1567(b).

that Plaintiff was unable to perform her past relevant work as a home health aide, housekeeper, shutter assembler, or filter packer.  Tr. 20.  Taking into consideration his RFC determination, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform according to the Medical Vocational Guidelines.  Tr. 20-21.

Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council.  After considering the ALJ's decision, the Appeals Counsel denied the request on November 12, 2013.  Tr. 1-6.  Accordingly, the ALJ's August 10, 2012 decision is the final decision of the Commissioner.  On November 27, 2013, Plaintiff timely filed her Complaint with this Court under 42 U.S.C. §§ 405(g), 1383(c)(3).  Doc. 1.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by

substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

IV. Discussion

    A. *Mental Impairments*

Plaintiff first argues on appeal that the ALJ erred in his determination that Plaintiff's mental impairments were non-severe. Specifically, Plaintiff asserts that the ALJ failed to follow the special technique set forth in the regulations for evaluating the severity of a claimant's mental impairments. 20 C.F.R. § 1520a. Defendant responds that to be considered a severe impairment under the regulations, an impairment must be severe for at least twelve consecutive months. Social Security Ruling ("SSR") 96-3; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). Defendant argues that Plaintiff failed to prove that her alleged depression and bipolar disorder could have affected her ability to perform basic mental work activities for at least twelve consecutive months. Plaintiff replies that Defendant's argument does not address the ALJ's failure to follow the criteria set forth by 20 C.F.R. § 1520a in order to determine the severity of mental impairments. The Court agrees with Plaintiff.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that her impairments are severe. *Bowen*, 482 U.S. at 146 n.5. A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "A non-severe impairment is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.

1984). "The ALJ must consider every impairment alleged." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). When determining a claimant's RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe. 20 C.F.R. § 404.1545(a)(2); SSR 96-8p. The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

"To evaluate a claim of disability based on mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique ("PRT"), that is set out at 20 C.F.R. § 404.1520a." *Haynes v. Astrue*, 2012 WL 4466478, at *4 (M.D. Fla. Sept. 27, 2012). Pursuant to the regulation, the ALJ must rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section. 20 C.F.R. § 404.1520a(b)(2). Sub-paragraph (c)(4) requires the degree of limitation in the functional areas of daily living; social functioning; and concentration, persistence or pace be rated using a five-point scale of: "none, mild, moderate, marked, and extreme," and the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "none, one or two, three, four or more." Section 404.1520a (e)(2) provides in pertinent part that "[a]t the administrative law judge hearing [level] ... the decision must include a specific finding as to the degree of limitation in each of the functional

areas described in paragraph (c) of this section." Determination of the functional limitations is a "highly individualized" and fact-specific determination. 20 C.F.R. § 404.1520a(c).

Here, at step two, after determining that Plaintiff had severe impairments of L5-S1 fusion, fibromyalgia, and asthma, the ALJ stated: "Although there is also an allegation of depression, the undersigned finds that this is not a severe impairment." Tr. 14. This was the entirety of the ALJ's findings at step two. The ALJ acknowledged later in the opinion when discussing Plaintiff's RFC, that there was no history of mental health treatment until the filing of disability and that mental status functioning during physical assessment and examinations noted that Plaintiff was alert and fully oriented with intact memory. Tr. 19. Consequently, the ALJ found that the mental health treatment notes, as he cites, are "suspect and appear exaggerated." Tr. 19, 313-30, 380-94.

Although the record reveals diagnoses of bipolar, PTSD, depression, agoraphobia with panic attacks, and the use of psychotropic medications (Tr. 315, 385), the ALJ does not discuss or rate the degree of functional limitations resulting from Plaintiff's mental impairments according to PRT outlined at 20 C.F.R. § 404.1520a. [3] This was in error and the matter will be remanded for this determination.

---

[3] And the Court does not see in the record that a psychiatric review technique was performed.

### B.    *Function-by-Function Assessment*

Plaintiff next argues that the ALJ failed to consider and fully discuss the impact that Plaintiff's bipolar disorder, prolonged PTSD, mood disorder, and agoraphobia with panic attacks would have on Plaintiff's RFC. Plaintiff believes her mental limitations are severe and a more limited RFC is reasonable. In response, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment; therefore, the ALJ had no reason to include such limitations in his RFC finding. Tr. 14, 19.

When an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1520(e). Here, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 14. The ALJ then proceeded to assess and make a finding regarding the claimant's RFC. In his decision, the ALJ found that Plaintiff retained the ability to perform light work. Tr. 15.

The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence and medical source statements. *Id.* At the hearing level, the ALJ has the responsibility

of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). When determining a claimant's RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe. 20 C.F.R. § 404.1545(a)(2); SSR 96-8p. The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability. *Walker*, 826 F.2d at 1001.

As the Court has found that the ALJ erred by failing to properly consider all of Plaintiff's alleged mental impairments and to determine whether they are severe, *supra* Sec. IV.A, on remand the ALJ will necessarily have to re-evaluate each of Plaintiff's claimed mental impairments, which may have an effect on the ALJ's analysis of the proper limitations to place in Plaintiff's RFC. Thus, the Court will remand the matter for the ALJ to re-evaluate Plaintiff's RFC.

C.   *Medical-Vocational Guidelines*

Plaintiff next argues on appeal that the ALJ's findings are not supported by substantial evidence because he relied exclusively on the grids, and that testimony of a VE was required because Plaintiff suffers from non-exertional mental limitations, which were not considered by the ALJ. Defendant responds that the ALJ properly relied upon grid rules §§ 202.21 and 202.22 to determine that Plaintiff is not disabled because substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment.[4]

---

[4] "In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental

In a disability determination, once a claimant proves that she can no longer perform her past relevant work, "the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). One way for the Commissioner to carry this burden is through an application of the Medical-Vocational Guidelines, also known as the "grids."[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. "Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985). "It is only when the claimant can clearly do unlimited types of light work that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989). Accordingly, "[w]hen a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE." *Smith v. Soc. Sec. Admin.*, 272

---

restriction. Nonexertional impairments may or may not significantly narrow the range of work a person can do." SSR 83-14, 1983 WL 31254 at *1 (S.S.A. 1983). Non-exertional limitations affect a claimant's ability to meet the demands of jobs, other than strength demands. 20 C.F.R. § 404.1569a(c).

[5] "The grids are a series of matrices which correlate a set of variables – the claimant's residual functional capacity (*i.e.*, the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered." *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985).

F. App'x 789, 799-800 (11th Cir. 2008) (citing *Jones*, 190 F.3d at 1229). If non-exertional impairments are minor or are found to be not credible, however, exclusive reliance on the grids is appropriate. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 826 (11th Cir. 2010).

Here, the ALJ determined that the grids support a finding that Plaintiff is not disabled. Tr. 20. The ALJ found that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* The ALJ also noted that Plaintiff is capable of performing the full range of light work, and although the ALJ did not note any non-exertional limitations specific to Plaintiff, he did state that "the additional limitations have little or no effect on the occupational base of unskilled work." *Id.* As the Court discussed *supra* at Sec. IV.A, the ALJ did not properly follow the PRT when determining that Plaintiff does not suffer from severe mental impairments. If the ALJ determines at step two that Plaintiff does suffer from severe mental impairments, these would be non-exertional limitations that could affect Plaintiff's ability to perform the requirements of a light level of work; and, thus, should be considered by the ALJ at step five. To determine the extent to which these limitations could erode the light occupational base should be determined on remand by calling a VE to testify.

### D. Treating Physician

Finally, Plaintiff argues on appeal that the ALJ erred in assigning little weight to Plaintiff's treating physician, Dr. Adam Shuster, M.D. Defendant responds that

the ALJ properly considered the records and opinion of Dr. Shuster. The Court agrees with the Commissioner.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. Moreover, opinions on some issues, such as the claimant's RFC and whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p. The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion of whether the claimant meets a listed impairment, a claimant's RFC (20 C.F.R. §§ 404.1545, 404.1546) or the application of vocational factors, because that ultimate determination is the sole province of the Commissioner. 20 C.F.R. § 404.1527(e).

Generally, when determining a plaintiff's RFC "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, ⸻ F. App'x ⸻, 2014 WL 595284, *4 (11th Cir. Feb. 18, 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240(11th Cir. 2004)); 20 C.F.R. § 404.1527(c)(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Comm'r of Soc. Sec.*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent

with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1240). Under the regulations, the ALJ must weigh any medical opinion based on the treating relationship with the claimant, the length of the treatment relationship, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source and other factors. *See* 20 C.F.R. § 404.1527(c), (c)(2)(i)-(ii), (c)(3)-(6); *Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements); *Lewis*, 125 F.3d at 1440. Where a treating physician merely has made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); SSR 96-2p.

In this case, Dr. Shuster completed a Medical Verification Form ("verification forms") on August 16, 2011, and another verification form on March 17, 2012. Tr. 378, 568. Dr. Shuster opined that Plaintiff was unable to sit, stand, bend, or lift more than ten pounds. *Id.* He also opined that Plaintiff's condition was permanent and she was unable to work at all. *Id.* The ALJ considered Dr. Shuster's opinion but gave his opinion little weight because the opinion was not supported by treatment notes or other medical evidence in the record. Tr. 17, 19. The Court finds this is supported by substantial evidence.

First, Dr. Shuster's verification forms essentially concluded that Plaintiff was disabled. A statement that a claimant is disabled or unable to work is not a medical opinion and that statement is not entitled to controlling weight or any special significance. 20 C.F.R. § 404.1527(d). Second, Dr. Shuster's opinions are not supported by treatment records or other record evidence, as noted by the ALJ. Tr. 19. The objective medical findings from other physicians who examined Plaintiff do not indicate that Plaintiff was as limited as Dr. Shuster opined. For example, Plaintiff had a negative MRI of the cervical spine that did not explain the neurological symptoms in her upper limbs. Tr. 535. Dr. Jeffrey Henn referred Plaintiff to Dr. Nima Mowzoon in August 2011 because he did not have any explanation for Plaintiff's current symptoms and Plaintiff looked fine from a surgical standpoint. Tr. 532. Dr. Mowzoon reviewed Plaintiff's MRI of the lumbar spine and noted that it showed some degree of mild to moderate stable neuroforaminal stenosis. Tr. 532. On examination, Plaintiff had a normal neurological and motor examination. Tr. 533, 534. Plaintiff also had normal gait and station. Tr. 534. Plaintiff received a nerve conduction study due to pain and numbness in the lower extremity and both hands which findings were minimal and were suggestive of very mild left ulnar neuropathy. Tr. 524. Dr. Mowzoon said Plaintiff's symptoms appeared to be significantly out of proportion to the minimal nerve conduction findings. Tr. 516. On examination, Dr. Mowzoon reported that Plaintiff had normal motor examination. Tr. 517. Plaintiff also had normal gait and coordination. *Id.* Notably, Dr. Mowzoon's examination

was completed in the same month that Dr. Shuster completed the first verification form, stating that Plaintiff was unable to work at all.

During another doctor visit in February 2012, Plaintiff's records showed she had full range of motion in the shoulders, elbows, and wrists. Tr. 506. There was no pain on lumbar extension, lumbar flexion, or lumbar rotation, or with straight leg raising. *Id.* Again, notably, this doctor visit was just one month prior to Dr. Shuster completing the second verification form, stating that Plaintiff was unable to work. Dr. Velimir A. Micovic, M.D. also examined Plaintiff in May 2011, and reported that Plaintiff's motor strength tests, deep tendon reflexes, sensory examination were all within normal limits. Tr. 481. Although Plaintiff was positive for joint pain and muscle aches, Plaintiff reported no numbness or weakness in the upper or lower extremities. *Id.*

The ALJ supported his decision and showed good cause for assigning little weight to Dr. Shuster's opinion in compliance with the applicable rules and regulations by noting that Dr. Shuster's opinions were inconsistent with the record as a whole, were conclusory or inconsistent with the medical records, and made no reference to any clinical or laboratory diagnostic techniques to support the opinions. *See Winschel*, 631 F.3d at 1179. Consequently, the ALJ properly followed the treating physician rule and had good cause to discount Dr. Shuster's opinion and not give it controlling weight, which the Court finds is supported by substantial evidence.

V.    Conclusion

1.    For the reasons stated in this Opinion and Order, the decision of the Commissioner is **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner to: (1) consider each of Plaintiff's alleged mental impairments and rate the degree of functional limitation resulting from such impairments, in accordance with 20 C.F.R. § 404.1520a; (2) evaluate whether Plaintiff's mental impairments limit her RFC; (3) further evaluate whether given Plaintiff's non-exertional impairments, there are other jobs in the national economy that Plaintiff can perform by calling a vocational expert to testify; and (4) make any other findings consistent with this Opinion and Order or in the interest of justice.

2.    The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 30th day of January, 2015.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record